IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| PETER P. MOE, | | |
| Plaintiff | | CIVIL ACTION 4:20-cv-00058 |
| v. | | |
| | | **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM** |
| GRINNELL COLLEGE, | | |
| Defendant. | | |

Plaintiff, Peter P. Moe ("Plaintiff") respectfully submits this motion to proceed under pseudonym and, accordingly, to file, and maintain, his Complaint as a pseudonymous Plaintiff. In light of the serious nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the possibility of acts of reprisal that could further prevent him from proceeding with his future endeavors, and inflict further harm to Plaintiff, including the exact type of harm that he seeks to remedy with this action.

Should the Court grant Plaintiff's motion, Plaintiff seeks leave from the Court to file a Protective Order—which will govern public filings, discovery, and pre-trial matters—after conferring with Defendant.

In *Doe v. Grinnell College*, Case No. 4:17-cv-00079, a case involving a former Grinnell student who sued the College under similar circumstances, the Court granted the relief requested herein.[1]

## BACKGROUND

Plaintiff was a student at Grinnell College ("Grinnell" or the "College") until he was

---

[1] A copy of the Court's order, dated July 7, 2017, ECF No. 39 (the "Grinnell Order"), is appended to Plaintiff's motion as Exhibit 2.

1

expelled in June 2018. Compl. ¶¶ 195, 205. Plaintiff was expelled after erroneously being found responsible for violating the College's Sexual Misconduct Policy. *Id.* ¶¶ 89-190. A sole adjudicator, the Honorable Marsha Ternus, determined responsibility in Plaintiff's case. *Id.* Justice Ternus has a history of gender-biased decision-making, namely bias against male respondents, in the cases that she has decided for Grinnell. *Id.* ¶¶ 191-194. Justice Ternus, and Grinnell have, further, treated female respondents with leniency, as opposed to male students accused of sexual misconduct. *Id.*

In Plaintiff's case, three friends, female students at Grinnell, got together and decided to jointly file Title IX complaints against Plaintiff. *Id.* ¶¶ 95-96. Two of the three complainants expressed a lack of clarity as to whether the encounters they had with Plaintiff were not consensual, telling the Title IX investigator that they had been told by others that the encounters were non-consensual. *Id.* ¶¶ 108, 175.

Complainant 3, who had alleged that Plaintiff had an erection while spooning with her, fully clothed, on Plaintiff's bed, said that this alleged conduct was "kind of" nonconsensual and that she still had friendly feelings towards Plaintiff. Complainant 3 did not think that Plaintiff acted towards her, or her two friends, with any malicious intent. *Id.* ¶ 175. By Complainant 3's own account, when she told Plaintiff that she was uncomfortable laying down Plaintiff was receptive. The two sat up right away. Complainant 3 was not sure whether Plaintiff's leg or fully clothed erection brushed against her for a second time. *Id.* ¶¶ 167-180. Complainant 3 did not feel that Plaintiff was pressuring her into any sexual activity. *Id.* Subsequent to this encounter, Complainant 3 and Plaintiff engaged in consensual, group sex. *Id.* ¶ 168. Based on the allegation that Plaintiff spooned with Complainant 3 without her consent, Grinnell commenced an investigation into charges of non-consensual sexual contact with respect to Complainant 3, for which Justice Ternus

found Plaintiff responsible. *Id.* ¶¶ 181-185. As she has in other cases, Justice Ternus found Complainant 3 to be more credible than Plaintiff even though Justice Ternus did not meet with Complainant 3. *Id.* ¶ 181.

Complainant 2 alleged that she and Plaintiff had sexual intercourse but she was too incapacitated to consent. *Id.* ¶¶ 137-166. Based on these allegations, Grinnell opened a formal investigation and charged Plaintiff with nonconsensual sexual intercourse. The record facts showed that Complainant 2's friend contradicted her allegations of incapacitation and that Complainant 2 and Plaintiff had a long conversation prior to returning to Complainant 2's dorm room, where the sexual activity occurred. *Id.* Complainant 2 gave inconsistent statements to the investigator and Justice Ternus, and, further, acknowledged that she *could have* consented to the sexual activity with Plaintiff. *Id.* ¶ 149. Justice Ternus found Plaintiff responsible, though she did not "reach the issue" of whether Complainant 2 was intoxicated. She merely found Complainant 2 to be more credible by disregarding the numerous inconsistencies in Complainant 2's statements and mischaracterizing Plaintiff's *consistent* statements as lacking in credibility. *Id.* ¶¶ 151-166.

Complainant 1 alleged that she had sexual intercourse with Plaintiff, with whom she had long been friends, but was too incapacitated to consent. Grinnell opened a formal investigation as to these allegations. Despite Complainant 1's allegation that the sexual encounter with Plaintiff was not consensual, she told the Title IX investigator, that, at the time, she wanted to have sex with Plaintiff and she "okayed it," she "seemed enthused" during the sexual encounter, and that she went along with having sexual intercourse with Plaintiff because kissing him felt good. *Id.* ¶ 108. Justice Ternus found Plaintiff not responsible for non-consensual sexual intercourse with respect to Complainant 1. Instead, Justice Ternus found him responsible for non-consensual contact, though she acknowledged that Plaintiff had not been charged with this form of

misconduct. *Id.* ¶ 130.

Justice Ternus then charged Plaintiff with engaging in a pattern of predatory behavior even though this did not constitute a separate violation of the Sexual Misconduct Policy. *Id.* ¶¶ 186-190. Further, the record evidence did not support a pattern of misconduct. *Id.* Throughout the process, Justice Ternus treated Plaintiff like a male aggressor, even though he elected to identify as "nonbinary" for purposes of the Title IX proceedings. *Id.* ¶¶ 100, 153, 234.

Grinnell administrators Sarah Moschenross, who expelled Plaintiff, and Andrea Conner, who denied Plaintiff's appeal, blindly followed Justice Ternus' opinion in Plaintiff's case. *Id.* ¶¶ 195-205. Upon information and belief, Conner also allowed Justice Ternus to review, and comment on, Plaintiff's appeal (as had happened in other cases), infecting the appeal process with the same gender bias that was present in the adjudication process. *Id.*

Due to the harm caused to Plaintiff as a result of the erroneous finding and sanction, including to his reputation, Plaintiff has filed claims against Grinnell for: i) violations of Title IX of the Education Amendments of 1972; ii) state law breach of contract; iii) state law breach of the implied covenant of good faith and fair dealing; and iv) state law wrongful discipline/lack of fundamental fairness.

## ARGUMENT

### The *Sealed Plaintiff* Factors Weigh in Favor of Pseudonym Treatment

This Court has relied on the Second Circuit's balancing test for pseudonym treatment, which identifies multiple factors a court should consider when determining whether a plaintiff should be allowed to proceed anonymously. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008). In balancing the plaintiff's privacy interests, the prejudice to the defendant, and the public interest, *id.* at 186–87, a court should consider:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189–90 (internal citations, quotations, and alterations omitted). *See also* Grinnell Order, at p. 3. Applying this framework to the instant matter, a balancing of these factors leads to the conclusion that Plaintiff should be permitted to proceed as "Peter P. Moe."

### A. Absent Pseudonym Protection Plaintiff Will Suffer the Very Harm He Seeks to Remedy Through This Lawsuit

This factor weighs in favor of allowing Plaintiff to proceed pseudonymously as the revelation of his identity would result in significant harm to Plaintiff, the exact type of which he seeks to remedy through the prosecution of this lawsuit. *See* ECF, Grinnell Order, at p. 5 (noting this is the determinative factor); *Doe v. Colgate Univ.,* No. 5:15-CV-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("[s]hould Plaintiff prevail in proving that the charges against him were unfounded and the procedures Defendants followed in their investigation were unfair, forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges.")

The District Court in *Doe v. Trustees of Dartmouth College*, No. 18-CV-040-LM, 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018), recognized this as the most significant factor in its

5

analysis of the plaintiff's concern that public disclosure of his identity would forever subject him to reputational damage and impair his future educational and career prospects, regardless of the outcome of the litigation. The Court agreed that this concern was "exacerbated in the Internet age, which can provide additional channels for harassment and will connect plaintiff's name to Dartmouth's findings and sanction forever, whether or not he is successful in this litigation." *Id.*

As also noted in *Doe v. University of St. Thomas*, No. 16-cv-01127, 2016 WL 9307609 at *2 (D. Minn. May 25, 2016), "forcing Mr. Doe to proceed under his true name would *guarantee* a permanent label as a sexual offender, discoverable with a simple Google search; that is arguably worse than the reputational harm he complains of from the University's currently confidential disciplinary proceedings. This factor weighs heavily in favor of pseudonymous proceeding in this case." *Id.* The court further noted:

> It does not require speculation or surmise to realize that a young man found to have committed a non-consensual sexual act at a university – in an administrative proceeding requiring a preponderance of the evidence – could be permanently harmed by release of that information even if he later prevails in his challenge to the validity of the process that judged him guilty in the first place. This is particularly so in light of the highly charged attention being paid to issues of sexual assault and affirmative consent on campuses today.

*Id.* at *4. *See* Grinnell Order, at p. 6.

Even if Plaintiff ultimately obtains a favorable verdict on his Title IX and other claims, his future academic and career prospects would nonetheless be impacted if the Court required him to disclose his identity because any graduate school or potential employer could discover that Plaintiff was accused of sexual misconduct quite easily—his name will be in the public domain solely as a result of this litigation. Given the serious and permanent ramifications of publicly disclosing Plaintiff's identity, he should be permitted to proceed under pseudonym.

**B. <u>The Litigation Involves Matters That are Highly Sensitive and Personal</u>**

Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation. Plaintiff does not merely contend that the revelation of his name would result in embarrassment or public humiliation. Rather, Plaintiff notes the privacy issues arising from being falsely linked to an allegation of sexual misconduct. Plaintiff's allegations involve intimate details of the sexual acts between Plaintiff and the Title IX complainants. Courts considering factually similar cases—including this Court—have weighed the personal nature of the allegations in favor of allowing the plaintiff to proceed under pseudonym. *See Doe v. Colgate Univ.*, No. 5:15-cv-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (collecting cases where a plaintiff was allowed to proceed anonymously either by consent or on motion based in part on the personal nature of the allegations). *See* Grinnell Order, at pp. 4-5.

Plaintiff, here, should be permitted to proceed anonymously due to the highly sensitive and personal nature of being falsely accused of sexual misconduct.

### C. Plaintiff's Identity Has Been Kept Confidential

To date, Plaintiff's identity is not publicly known and he has avoided publicity in this matter. *See Sealed Plaintiff*, 537 F.3d at 190. *See* Grinnell Order, at p. 6 (even limited media coverage did not reveal Plaintiff's identity and did not discuss Plaintiff's personal history).

### D. Grinnell Will Suffer No Prejudice

Grinnell can identify no prejudice that it will suffer should Plaintiff proceed anonymously. Grinnell knows Plaintiff's true identity and "'will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly.'" *See* Grinnell Order, at p. 7 (quoting *Colgate U.*, 2016 WL 1448829, at *3).

### E. There Is Weak Public Interest in Knowing Plaintiff's Identity

Plaintiff's interest in proceeding under a pseudonym outweighs "both the public interest in disclosure and any prejudice to the [D]efendant[s]." *Sealed Plaintiff*, 537 F.3d at 189. Given the

7

purely legal nature of the claims presented (*i.e.* Defendant violated Plaintiff's right to a fair process in violation of Title IX and other federal and/or state law), there is a weak public interest in learning Plaintiff's identity. Any interest the public has in the investigation is not "furthered by requiring the plaintiff to disclose his identity." *Id. See* Grinnell Order, at p. 6 (noting public interest in knowing Plaintiff's identity in this case is "atypically weak"). It is quite the opposite because Plaintiff's challenges to Grinnell's biased and unfair Title IX process concern the male student population at Grinnell as a whole. *See Doe No. 2 v. Kolko,* 242 F.R.D. 193, 195 (E.D.N.Y. 2006). As such, requiring Plaintiff to reveal his name could deter other similarly-situated individuals from litigating these claims. *See Doe v. Purdue Univ.*, 321 F.R.D. at 343 (D. Ind. 2017) (noting the "potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations") (citation omitted).

There is simply nothing about Plaintiff's status that would heighten the public's interest in these judicial proceedings sufficient to outweigh Plaintiff's right to privacy. Moreover, the public's knowledge will only be minimally restricted as it will still know the facts of what is alleged to have occurred in Plaintiff's case.

### F.  There Is No Alternative Mechanism for Protecting Plaintiff's Identity

For all of the reasons discussed above, there is simply no means to protect Plaintiff's identity other than allowing him to proceed by pseudonym. Plaintiff respectfully requests the Court's permission to do so.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court allow Plaintiff to proceed by pseudonym. Should the Court grant this request, Plaintiff also requests leave to file a Protective Order after conferring with Defendant.

Dated: February 19, 2020

                                BABICH GOLDMAN, P.C.

                                /s/ David H. Goldman
                                David H. Goldman
                                Amy K. Davis
                                501 S.W. 7th Street, Suite J
                                Des Moines, Iowa 50309
                                Telephone: (515) 244-4300
                                Email: dgoldman@babichgoldman.com
                                Email: adavis@babichgoldman.com

                                        -and-

                                NESENOFF & MILTENBERG, LLP

                                /s/ Andrew T. Miltenberg
                                Andrew T. Miltenberg (*pro hac vice* admission pending)
                                Kara L. Gorycki *(pro hac vice* admission pending)
                                363 Seventh Avenue, Fifth Floor
                                New York, New York 10001
                                Telephone: (212) 736-4500
                                Email: kgorycki@nmllplaw.com
                                Email: amiltenberg@nmllplaw.com

                                ***Attorneys for Plaintiff***